No. 60.—THOMAS HATCHER, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant.

[1.] Much latitude of discretion must be allowed the Courts, as to their mode of conducting business; to fetter their hands too much, would greatly impede and embarrass the administration of justice.

[2.] Where the defendant is indicted for an assault, with intent to murder, and it was proposed, by his Counsel, to prove a previous fight between the prosecutor and himself, two years previously, and then connect the two, by continued intermediate threats and acts of violence, on the part of the former, it is not error in the Court to require of Counsel to begin at the offence charged in the indictment, and travel back to the first fight, before that shall be given in proof.

[3.] It is the duty of the Judge to have *all* the evidence taken down, which is submitted to the Jury in the trial of felonies; still, it is questionable whether his failure to do so would constitute a good ground for a new trial.

[4.] Where there is a conflict in the testimony, Counsel, in his concluding argument, will not be stopped by the Court, as misrepresenting the testimony, because he assumes that the facts testified to by his witnesses were proven.

[5.] When the Court has charged, fully, all the law of the case, and the Jury, after consulting, return for further instructions upon some particular point, the Court is not bound to repeat all the law favorable to the accused.

[6.] Judgment will not be arrested because three of the nineteen Grand Jurors' names are set out by the initials of the Christian name only.

Assault, with intent to murder. Tried in Dougherty Superior Court, before Judge PERKINS, at June Term, 1855.

A motion was made, in arrest of judgment, upon the verdict in this case, because the names of only sixteen Jurors were written in the bill of indictment—the initials of the names of the other Jurors, only, being inserted. The motion was over-ruled, and defendant excepted.

Defendant's Counsel moved for a new trial, upon the following grounds, among others:

1st. That the Court erred in ruling out the testimony of Charles W. Rawson, of the fight between the prosecutor and defendant, about two years before the alleged crime, when

the prisoner's Counsel announced that they expected to connect the two fights, by repeated threats and continuous acts of violence on the part of Saucer, down to the time of the committing the crime charged in the indictment.

2d. That the Court erred in announcing to the Counsel, that he would not be particular in taking down the testimony, in the precise words and language of the witnesses, in the brief of testimony, and in holding that the brief required to be taken down by the Statute was only a memorandum, or the substance of the statements of the witness, taken at the discretion of the Court, and that Counsel for the prisoner could not be allowed to ask the Clerk, who was taking the brief, to take down any portion they might choose; but that the Court would only have taken down that portion of the testimony which it thought proper and material; and also, in refusing to let the brief be read over to the witnesses, after it was taken down, unless desired by the witness.

3d. That the Court erred in refusing to stop the State's Counsel in the concluding argument to the Jury, when misstating and misrepresenting the testimony, although requested so to do by the prisoner's Counsel; which misstatements consisted in the Counsel's saying to the Jury, that the evidence was, that Saucer, when he left the crowd and went in pursuit of Hatcher, did not have his hand in his pocket, but held both of them down by his side; when the testimony of J. T. Greer was, that one of his hands was in his pocket, and, he thinks, his left hand; also, that there was no evidence that Hatcher saw Saucer when he came up to the crowd; also, that the testimony of Walker was, that when Hatcher appealed to the by-standers on the side-walk, Saucer stopped pursuing him; when the testimony of Walker was, that Saucer did not stop until Hatcher turned round to shoot; and other misstatements, of the same kind: *The Court holding*, that he would not allow interruptions, when there was a conflict in the testimony.

4th. That after the Jury had retired to their room and remained some two or three hours in consultation, they were,

by their own request and the consent of Counsel, brought back and re-charged by the Court; in which re-charge, the Court told the Jury, that if they believed, from the evidence, that Saucer intended, when he went in pursuit of Hatcher, to commit a felony, Hatcher was justifiable; and when Counsel for prisoner rose to request the Court to correct his charge, he peremptorily ordered them to sit down, and refused to hear them; and the Jury retired, and in a few minutes, returned with a verdict of guilty.

5th. That two of the Jury, to-wit: Archibald P. Greer and B. A. D. Hampton, had formed and expressed a decided opinion, unfavorable to the prisoner, before they were taken on the Jury; and which opinions and expression were unknown to prisoner and his Counsel, at the time they were taken, but they were regarded as fair and impartial Jurors.

The last ground was supported by the affidavits of the Jurors themselves, showing, that from having seen the crime committed, and from having heard the evidence under oath, they had formed and expressed opinions as to the guilt of the prisoner.

The Court over-ruled the motion for a new trial, and defendant excepted.

On these exceptions, error has been assigned.

H. Morgan, for plaintiff in error.

Sol. Gen'l Lyon; Strozier & Slaughter, for the State.

*By the Court.*—Lumpkin, J. delivering the opinion.

Was it error in the Court to rule out the testimony of Charles W. Rawson?

The defendant proposed to prove, by this witness, a fight between the prosecutor and himself, two years before the alleged crime was committed, the prisoner's Counsel announcing that he expected to connect the two transactions, by repeated

and continued threats and acts of violence, on the part of Saucer, down to the time of committing the offence charged in the indictment.

[1.] Much latitude of discretion must be allowed to the Courts, as to the mode of conducting business; and to fetter their hands too much, will greatly impede and embarrass the administration of justice.

[2.] And we see no objection to the course pursued in this instance. Why could not Counsel begin at the last fight and go back to the first, as well as to reverse this order? By pursuing this course, there would be no danger of admitting illegal testimony: whereas, by getting in proof of the first fight, and then failing to connect the two, injury would have been done. True, the testimony could have been withdrawn, as to the first fight, if the defendant failed to connect the two. Nevertheless, impressions would have been made, which could not be eradicated.

The evidence, as to the intermediate threats and acts of violence, all came out; and it utterly fails to link the two fights together. On the contrary, it establishes the fact, that Saucer had stood in the relation of employer and friend to Hatcher, and done him kindnesses.

Perhaps the Court was not sufficiently guarded in the remarks made concerning the taking down of the testimony, if, indeed, they were made. They are not in the bill of exceptions, proper, but appear, by way of recital, in one of the grounds taken for a new trial. Whether, the motion being over-ruled, the Judge is to be understood as indorsing the truthfulness of all the facts assumed in the motion for a new trial, is somewhat questionable.

[3.] In the opinion of this Court, it is the duty of the presiding Judge, and one clearly prescribed by law, to have *all* the testimony which is submitted to the Jury taken down as accurately as possible, and read over to the witness, to be corrected and approved, to be used for any purpose which it may subserve. And we further hold, that it is the duty of the Court, when Counsel rise repeatedly and request that this

and that piece of evidence may be noted, by way of giving emphasis to it before the Jury, to set Counsel down; and thus, prevent the progress of the trial from being disturbed by such unreasonable interruptions.

Has any injury resulted to the party in this case? It is conceded, that all the material proof was taken down, and is now in the brief of testimony; and whether taken down or not, all of the evidence went to the Jury. We are not prepared to admit, that the omission to take down the proof, would be a good ground for a new trial. More could not be asked by the prisoner, than a fair and impartial trial upon *all* the facts. That he has had.

[4.] The next error complained of is, that the State's Counsel was not stopped, in his concluding argument, from misrepresenting the testimony—the Court deciding, that it would not listen to any application of this sort, where the evidence was conflicting. Defendant's Counsel acknowledges, in his argument before this Court, that there was a conflict in the proof upon the point about which the alleged misstatement took place; and the record confirms the fact. Was not the Court, then, clearly right in not interposing? It might be more proper, perhaps, where there is a conflict, for Counsel to speak a little more accurately as to what is or is not proven. But we must not prescribe an iron rule upon this subject. It would trammel, too much, that freedom of discussion so necessary to the eliciting of truth.

[5.] After the Jury had retired to consult, they returned to get further instructions from the Court. It is distinctly admitted, that in his general charge, at the close of the case, the Judge submitted the whole law of the case, fully, to the Jury. And it is not denied, but that what he subsequently repeated to them was correct. The complaint is, that he did not go far enough the second time; and that when Counsel rose to "*correct*" his charge, in this respect, he was set down.

We do not agree with defendant's Counsel, in denominating his effort as an attempt to "*correct*" the Court. It was neither more nor less than an attempt to get the Court to *re-iter-*

ate to the Jury *all* the charge which was favorable to his client. This the Court was not bound to do.

The ground, as to the disqualification of two of the Jurors, Greer and Hampton, is abandoned; and need not, therefore, be considered.

[6.] Was the Court wrong in over-ruling the motion to arrest the judgment, because the full names of sixteen Grand Jurymen, only, were in the body of the indictment, three more having been written with the initials only ?

In the first place, we say that this clerical error might have been corrected by the minutes of the Court or otherwise. Secondly, that men in this country are frequently just as well known by their initials, as any other way. The practice is somewhat different in England. A man is usually called, there, by his whole name—as, James Sheridan Knowles. And this has always been so. And hence, the Common Law rule, as to names, has always been more stringent than in this country. But, thirdly, this being a motion in arrest of judgment, and not affecting the real merits of the offence charged in the indictment, comes too late. "All exceptions which go merely to the *form* of an indictment, shall be made before trial; and no motion, in arrest of judgment, shall be sustained for any matter not affecting the real merits of the offence charged in such indictment." (*Cobb's Digest*, 833.) What a world of meaning in this little section! And yet, it has lain almost dormant in the Penal Code, for nearly twenty years! It is second only, in importance, to the 1st section of the same division, which declares, that every indictment shall be deemed sufficiently technical and correct, which states the offence so plainly that its nature may be easily understood by the Jury, and which was fully applied, for the first time, in *Studstill's case*, in 7 *Ga. R.* What a cloud of technical cobwebs and quibbling distinctions have been swept away by these two broad enactments!

The other two grounds, that the verdict was contrary to

law and evidence, are not insisted upon; and consequently, are not considered.