KIT BROWN, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

1. It is not error, on a trial for murder, for the court to allow evidence of a difficulty between the parties three weeks before. It bears upon the great question in every such case, to-wit: whether the killing was done with malice or not.

2. When a motion was made for a new trial, on the ground that a witness (whose affidavit was produced) would testify to certain threats made by deceased against the prisoner, and which the witness had communicated to the prisoner before the rencounter in which the killing occurred, and the movant stated on oath that said facts and their importance did not occur to him at the trial, and that he had not informed his counsel of them, he being an ignorant man and knowing nothing of his rights :

Held, that as it appeared on the trial that the prisoner and deceased had each made threats the one to kill the other, and as the evidence now relied on was only cumulative, and could at least only strengthen a line of defense, insisted on at the trial, it was not error in the judge to refuse the new trial, as the reason for the neglect to introduce it at the trial was unusual and open to suspicion.

3. The verdict in this case is justified by the evidence.

Criminal law. Evidence. New trial. Newly discovered evidence. Before Judge BUCHANAN. Monroe Superior Court. August Term, 1873.

Kit Brown was placed on trial for the offense of murder, alleged to have been committed upon the person of one Lindsey Johnson, on June 29th, 1873. The defendant pleaded not guilty. The evidence for the state made, in substance, the following case :

On the day specified in the indictment, the defendant was at the Sunday-school ground, near the Ocmulgee river, in Monroe county. He was heard to say that he did not come there to get a lesson, but to kill a negro, or to get killed. When the deceased started from the school-ground, some twenty persons surrounded him, for the purpose of preventing the defendant from killing him. The defendant went towards the crowd in which deceased was. As he approached he drew his knife. He ran into the crowd three times, with his knife in his hand, but was pushed off. Deceased asked him what he wanted. He replied, "Damn it, did I say I wanted anything?" Deceased then ran back and drew his pistol. Defendant picked up a rock, and as he did so deceased fired at him. The deceased again started home, and defendant went home. Between a quarter and a half a mile from where this difficulty occurred, defendant was seen coming back towards deceased. When he approached sufficiently near, he raised his gun and pointed it at deceased. Deceased drew his pistol and fired. Defendant ran up a little nearer, again raised his gun and pointed it at deceased, when the latter fired a second time. The defendant then ran still closer to deceased and fired, wounding him so severely as to cause his death. Defendant immediately decamped. Levi and Parker Brown were with the defendant. Levi is his brother. All had knives in their hands.

A witness for the state, by the name of Thomas Dumas, testified, substantially, as follows, over the objection of the defendant:

One Saturday evening, about three weeks before the homicide, we were all in the road playing marbles. The defendant said "you are all hallooing here now, and the first thing you know I will throw a marble down some of your damned throats." Deceased said, "you need not talk that way, Kit Brown, there are some others here besides you." The defendant ran up to deceased with his knife open and two rocks in his hand, and dared him to speak, threatening to cut his throat from ear to ear. Deceased remained silent. After that deceased

walked off and said, "Kit Brown, 'taint worth while for you to be rearing and cursing in that way ; I am not afraid of you." Whereupon the defendant ran up to him, placed his hand on his throat, and said, "did not I tell you to hush? No damned negro can talk back to me when I talk." Deceased stepped back and said, "get away, Kit Brown, I don't want any fuss with you." Witness told deceased to hush. Defendant said, " I am going home to get my pistol. I will see who is against me and who is not." The defendant said, as he walked off, "by G—d, I am not afraid of you damned negroes. By G—d, I ruled Jasper county, and damned if I don't rule Monroe."

The evidence for the defense tended to show that the defendant was the aggressor in the school-ground difficulty. That at the time the defendant was approaching deceased, when the homicide was perpetrated, a man by the name of Anthony Hammond begged him to desist; that he agreed to cease provided deceased would also stop, and as a move in that direction, lowered his gun, resting the butt on the ground ; that Hammond then approached deceased and his party, saying, " peace is made here, gentlemen," several times. That some one said, "damn the peace," and a shot was fired, the bullet striking the ground near Hammond's feet. That a second shot was then fired, after which the defendant fired at deceased. That numerous threats had been made by deceased to kill defendant, all of which had been communicated to him prior to the homicide.

The jury found the defendant guilty. He moved for a new trial upon the following grounds, to-wit :

1st. Because the court erred in admitting the evidence of Thomas Dumas, as to the difficulty some three weeks before the homicide.

2d Because the verdict was contrary to the testimony.

3d. Because the defendant has discovered since the trial of said cause, that he can prove by one Bill Watson that on the night previous to the day on which deceased was killed, he saw him moulding bullets, which he (deceased) said he was

moulding for the purpose of killing the defendant; that deceased told him that he was going to kill the defendant on the next day, and that he (Watson) must tell the defendant to come down there, and that he was going to kill him, but not to tell him that he (deceased) had a pistol. That said Bill Watson, on the morning of the day on which deceased was killed, told the defendant of all that the deceased had said. That this evidence did not occur to him at the time of the trial; that he knew nothing of its effect and consequently did not communicate it to his counsel. That he was an ignorant colored man.

. This last ground was supported by the affidavits of Bill Watson, of defendant and of his counsel.

A new trial was refused and defendant excepted.

J. A. Hunt; E. B. Amos, by A. M. Speer, for plaintiff in error.

T. B. Cabaniss, solicitor general, by Peeples & Howell, for the state.

McCay, Judge.

1. The relations between the prisoner and deceased, whether they were friends or enemies, would seem in almost every homicide to be material. That they had a difficulty three weeks before certainly tends to elucidate the question of malice. True, they may have made friends, but, *prima facie,* we think it furnishes evidence going to show the state of mind at the killing. The normal condition of men's relations to each other, at least in society, is doubtless that of friendship. But if that relation be shown to have been interrupted, we think it not unfair to presume, *prima facie*, that the interruption continues. We think, therefore, there was no error in allowing this testimony to go before the jury.

2. The other point in this case, to-wit: the ground of new trial, based upon the fact that proof can be made that the deceased had threatened to kill the prisoner, and that this threat

had come to his ears, presents a new question.    It is not pretended that this is newly discovered evidence, as it is plainly, in the very nature of it, evidence that the prisoner must have known of at the trial.    The ground assumed is, that the prisoner is a very ignorant man, and did not know of its importance; that he did not inform his counsel of it for this reason. We are not prepared to say that a case might not exist where such an excuse as this for not using testimony might not be sufficient.    There are extreme cases of ignorance where the principles of justice and equity might make it the duty of the court to push its liberality and charity to a great extent.    But the opportunities for trifling with the courts by such legal *laches* as this is so great, that the case presented should not only present a very clear case of want of consideration and ignorance, but the evidence should be of paramount importance. . Neither of those things appear here.    The prisoner seems to have fully understood that it was important to show the relations between him and the deceased, and upon this very point, of threats by deceased, they had distinct evidence before the jury.    We are incredulous, under the circumstances, of his want of knowledge of the value of the testimony.    Besides, we think it not of such great importance as is insisted on.    At best it is only cumulative.    As we have said, evidence upon this very point was produced, and it is doubtless true, and was so thought by the jury, that there had been .mutual threats, of which both parties had heard.

3. Nor do we think the new evidence would at all justify or excuse the prisoner.    The evidence presents a bad case of recklessness, violence and anxiety to take the life of deceased, and the facts present no such circumstances as would make the new evidence of the deceased's threats and the knowledge of them by the prisoner, of any very striking significance.

.Judgment affirmed.