Combs *v.* The State.

———◆◆◆———

No. 8890.

## COMBS *v.* THE STATE.

CRIMINAL LAW.—*Murder.*—*Evidence.*—*Declarations of Deceased.*—*Remonstrances with Deceased.*—*Uncommunicated Threats.*—On the trial of an indictment for murder, the court did not err in refusing to admit in evidence statements of the deceased to witnesses, in response to their remonstrances with him for visiting the defendant's wife. Such statements do not fall within the rule making previous threats of the deceased, although uncommunicated, competent evidence for the accused.

SAME.—*Wife's Confession of Adultery with Deceased, by his Coercion.*—*Uncommunicated Reports and Rumors.*—On such trial, the court did not err in refusing to permit the accused to prove by his wife that the deceased

had coerced her into an act of adultery, and that, on the night before the killing of the deceased, she had told her husband that all the reports and rumors he had heard were true, there being no offer to prove what reports or rumors he had heard, or that the act of adultery had ever come to his knowledge.

SAME.—*Argument.*— *Discretion of Trial Court.*—*Employment of Counsel by Defendant's Wife.*— *Witness.*—On such trial, the court did not err in refusing to exercise its discretion and restrain the State's counsel from commenting upon an alleged employment of counsel by the wife—who was a witness—of the accused, the night before the homicide.

SAME.—*Immaterial Statement in Argument.*—On such trial, the statement by an attorney for the State, that "Three or four men have been recently executed at Indianapolis, most of whom set up the plea of insanity," was not of sufficient materiality to warrant a reversal of the judgment of conviction.

SAME.— *Conduct of Argument.*—*Abuse of Discretion.*—The conduct of the argument is a matter much within the discretion of the trial court, and it is only where there is an abuse of such discretion that appellate courts will interfere.

PRACTICE.— *Transcript.*—*Bill of Exceptions.*— *Date of Filing.*— *Supreme Court.*—*Ex Parte Affidavit.*—The date of filing a bill of exceptions, shown by the record below, and correctly copied into the transcript filed in the Supreme Court, can not be contradicted upon appeal by a mere *ex parte* affidavit.

From the Howard Circuit Court.

*M. Bell* and *M. McDowell*, for appellant.

*D. P. Baldwin*, Attorney General, and *J. E. Moore*, Prosecuting Attorney, for the State.

ELLIOTT, J.—Appellant was tried upon an indictment charging him with the crime of murder. The jury found him guilty of manslaughter, and the proper judgment was pronounced upon the verdict.

The only questions discussed are those arising upon the ruling denying appellant's motion for a new trial. The State asks that we disregard the statement of the record, that the bill of exceptions was filed at the date named. This request is based upon the affidavit of the prosecuting attorney contradicting the statement of the record as to the date of the filing of the bill. The date of the filing properly appears

as a part of the record of the court below, and the entry of filing further appears to be correctly copied into the transcript filed in this court. We know of no rule which permits a statement, which forms part of the record, to be contradicted upon appeal by a mere *ex parte* affidavit. The claim of the State has no support from authority, and is certainly opposed by familiar elementary principles.

Appellant claims that the trial court erred in excluding evidence of declarations made by the deceased. The record shows that the appellant offered to prove, by one Stephenson, the following statements of the deceased, made in response to the witness' remonstrance with the deceased for visiting appellant's wife : "She is a tony little woman, and I propose to go there when I please." By another witness the appellant offered to prove that the deceased, in answer to a remonstrance similar to that of Stephenson, said : "That he would go there as much as he pleased ; that he was not afraid of Combs ; that he was not afraid of his shooting." There was no error in excluding this evidence. It does not fall within either the letter or the spirit of the rule, that previous threats made by the deceased are competent, although not communicated to the accused. Previous threats are competent, because they supply grounds for an inference that the deceased was the assailant, or that he wrongfully brought on the combat. Of declarations such as those sought to be proved in this case, no such thing can be justly said. Especially is this true, where, as in the present instance, such declarations were never communicated to the accused.

The accused offered to prove by his wife, whom he had called as a witness, that the deceased had coerced her into an act of adultery, "and that, on the night before the death of the deceased, the witness had told her husband, the defendant, that all the reports and rumors that he had heard were true." The record recites, that "The court sustained the objection of the prosecution, on the ground that the defend.

ant would not undertake to show that the facts as detailed were communicated to him.'' There was no offer to prove what reports or rumors the accused had heard, nor was there any offer to prove that the act of adultery spoken of by the witness ever came to the knowledge of the appellant. We know of no principle or authority which would warrant the introduction of this evidence. A thing utterly unknown to the appellant could not have justified, excused or palliated his taking of Olinger's life. It could not have provoked any sudden transport of passion, nor could it have disproved malice, nor have tended to show that the accused was ever in real or apparent danger. The excluded evidence certainly could not be competent, upon the ground upon which evidence of preceding threats are held admissible, for there had been no combat, not even a quarrel. The appellant crept up to the deceased when he was unarmed and defenceless, while he was engaged in his daily morning work, and deliberately shot him dead. Counsel have neither adduced argument nor cited authority. All they say is: ''We submit that this evidence was competent, and should have been admitted.'' Upon what ground the proposition is based, we are not informed, and we must conclude that counsel could neither invent plausible arguments nor find authority lending their proposition any support.

The appellant's counsel seem to rely most strongly upon the error alleged upon the ruling of the court in permitting one of the attorneys for the prosecution to make certain statements and comments to the jury, in the closing address. One of the statements complained of is thus set forth in the record: ''I propose to show that this woman, Mary Combs, went to Richmond the night before the homicide; Judge Bickle lives in Richmond; she went after Bickle, and he was hired by her; Bickle was here early in the term; is here at the trial. We may draw our own inferences from the facts proved.'' We can not say that the court erred in refusing

to restrain counsel from commenting upon Judge Bickel's alleged employment by the witness, Mary Combs. It is always proper to show what part a witness has taken in the prosecution or defence of a cause, and, for this purpose, it is proper to ascertain whether he has employed or assisted in employing attorneys. The counsel for the State asked the jury to draw their own inferences from certain facts disclosed by the evidence, and in so doing the counsel may have asked the jury to violate all logical rules, and do violence to all the laws of legitimate inference, but we can not undertake to correct their logic. If there were any facts at all before the jury, the question as to what conclusions should be drawn was one for argument, and it was not for the court to determine whether the inference of counsel was a correct or an erroneous one. Another consideration requiring us to rule against the appellant upon this point, is that the record does not show what statements or admissions were made by Judge Bickle or his associate counsel to the jury, in the addresses made in appellant's behalf ; for aught that appears the employment of Judge Bickle by Mary Combs, appellant's wife as well as witness, might have been freely admitted. There certainly would have been no impropriety in the wife's having employed counsel for her husband, and none, surely, in counsel's having accepted employment from her. The circumstances of such employment might, nevertheless, have been fair matter for comment in the presentation of the case to the jury, for there are in the evidence some singular circumstances connected with the behavior of the witness, Mary Combs.

One of the attorneys for the prosecution, in addressing the jury, said : "Three or four men have been recently executed at Indianapolis, most of whom set up the plea of insanity," and of this statement appellant earnestly and bitterly complains. We do not regard such a statement as of sufficient materiality to warrant a reversal. Courts ought not to reverse causes because counsel, in the heat of argu-

ment, sometimes make extravagant statements, or wander a little way outside of the record. If a matter of great materiality is brought into the record as a matter of extended comment, then there would be reason for setting aside the verdict. If every immaterial assertion or statement which creeps into an argument were to be held ground for reversal, courts would be so much occupied in criticising the addresses of advocates as to have little time for anything else. Common fairness requires that courts should ascribe to jurors ordinary intelligence, and not disregard their verdicts because counsel, during the argument, may have made some general statements not supported by evidence. Of course, there may be cases where the matters stated are so weighty and important as to do the accused injury, and, whenever this is so, the appellate court should not hesitate to adjudge a reversal. The matters introduced into the argument of counsel in *Ferguson* v. *The State*, 49 Ind. 33, were of a character very likely to work the accused serious harm, and the judgment was rightly reversed. The conduct of the argument is a matter much within the discretion of the trial court, and it is only where there is an abuse of discretion that appellate courts will interfere. This is the doctrine of *Ferguson* v. *The State*, and is sustained by authority. *Hatcher* v. *State*, 18 Ga. 460 ; *State* v. *Hamilton* 55 Mo. 520 ; *Larkins* v. *Tarter*, 3 Sneed, 681 ; *McNabb* v. *Lockhart*, 18 Ga. 495 ; *Thompson* v. *Barkley*, 27 Pa. St. 263 ; *Read* v. *The State*, 2 Ind. 438 ; Hilliard New Tr. 225.

It is the duty of the judge who presides at the trial to restrict the argument upon the facts to such as are established by, or inferable from, the evidence ; but, in doing this, it is not his duty to abridge the freedom of debate, by preventing counsel from enforcing this argument by illustration or example. It is not always easy to correctly draw the line between what is proper and what is improper. Matters of common, general public information may sometimes

Combs *v.* The State.

be properly referred to, and matters of known and settled history may often be commented upon with entire propriety, but matters of a local nature, or matters not of common and public notoriety, are not properly the subject of comment. To rigidly require counsel to confine themselves directly to the evidence would be a delicate task, both for the trial and the appellate courts, and it is far better to commit something to the discretion of the trial court than to attempt to lay down or enforce a general rule defining the precise limits of the argument. If counsel make material statements outside of the evidence which are likely to do the accused injury, it should be deemed an abuse of discretion, and a cause for reversal ; but where the statement is a general one, and of a character not likely to prejudice the cause of the accused in the minds of honest men of fair intelligence, the failure of the court to check counsel should not be deemed such an abuse of discretion as to require a reversal.

We are asked to reverse upon the evidence, and it is insisted, with ability and earnestness, that the testimony of the medical experts clearly shows that the appellant was insane at the time the homicide was committed. We have carefully examined the evidence, and are satisfied that the verdict is well supported. There is, indeed, much expert testimony given upon hypothetical cases, which is favorable to the appellant, but this is far outweighed by evidence of real, substantial facts, which furnish the verdict of the jury a solid foundation. Part of the testimony given by the medical witnesses is of a mere speculative character, and of no great importance ; other parts, to say the least, are of such a character as to do no great credit to either the witness or the profession.

Judgment affirmed.