## DANIEL v. THE STATE.

1. The defense in a murder trial being that the accused shot and killed the deceased under the fears of a reasonable man that his own life was in danger, and there being evidence in behalf of the accused tending to show that, immediately before the homicide was committed, the deceased, upon provocation by words alone, placed his hand behind him and advanced upon the accused, it was erroneous to reject evidence offered to show that the deceased habitually and notoriously carried a pistol and that this was known to the accused. This is true whether upon the occasion of the homicide the deceased actually had upon his person a concealed pistol or not. Such evidence is in such a case admissible, however, solely for the purpose of determining whether or not the killing was really done under the influence of reasonable fears.

2. A witness for the State having denied under oath that he was very intimate and friendly with the deceased, it was competent for the accused to prove the contrary.

3. It was not, however, on such trial competent for the accused to prove that on a former occasion, remote in time from the day of the homicide, he had done an act which incensed the deceased; it not appearing that what occurred on that occasion was followed up by any subsequent quarrels or difficulties between the accused and the deceased, or that the act of the accused on the previous occasion referred to tended to throw any light whatever upon his motive in taking the life of the deceased.

Submitted October 15, — Decided November 30, 1897.

Indictment for murder. Before Judge Hart. Greene superior court. August term, 1897.

*S. H. Sibley* and *H. T. Lewis*, for plaintiff in error.

*J. M. Terrell*, attorney-general, and *H. G. Lewis*, solicitor-general, by *Anderson, Felder & Davis*, contra.

COBB, J. Daniel was indicted for the offense of murder. Having been convicted, he made a motion for a new trial, which was overruled, and he excepted. According to the evidence for the State, an unprovoked case of murder was made out. From the evidence offered in behalf of the accused it appeared, that a few minutes before the homicide an altercation had taken place between the accused and the deceased about some trifling matter, during the progress of which the latter had become greatly incensed; that at the time of the killing the accused made use of some opprobrious expressions, when suddenly the deceased rushed at him, threw his hand in his right hip pocket and asked if the expressions applied to him. The accused then shot him.

His defense was that he was acting under the fears of a reasonable man that his own life was in danger. As illustrating the reasonableness of his fears, the court allowed proof of antecedent threats to take the life of the accused, which were communicated to him; of the quarrelsome and impulsive disposition of the deceased; and of his large physique, as compared with that of the accused.

1. During the progress of the trial evidence was offered to the effect that the deceased "habitually and notoriously carried a pistol, and this habit was known to the defendant." The trial judge declined to admit the evidence, and we think he erred in so doing. In the case of King v. State, 7 Am. St. Rep. 681, the Supreme Court of Mississippi held: "Evidence that deceased habitually went armed with deadly weapons, and that this was known to his slayer, is admissible in behalf of the latter, on the same principle which justifies the admission of evidence of the threats or character of the deceased." Arnold, C. J., in the opinion, says: "The same principle which justified the admission of evidence as to the character and threats of the deceased rendered the excluded testimony competent." Substantially the same ruling is made in Moriarty v. State, 62 Miss. 654; State v. Graham, 61 Iowa, 608; Payne v. Com., 1 Metc. (Ky.) 370; State v. Smith, 12 Rich. Law, (S. C.) 430. An examination of these cases will show that they all with perfect unanimity treat this evidence as admissible under the same rules which govern the admission of evidence of the bad character of the deceased; and so far as we can find, there are no cases holding the contrary. This being true, and this court having laid down no rule for guidance in the admission of evidence of the character sought to be admitted in this case, it becomes necessary to ascertain what is the law in this State with reference to the admission of evidence of the turbulent and violent character of the deceased. The case of *Monroe* v. *State*, 5 *Ga.* 85, is cited in a number of decisions in other jurisdictions as authority on this question. In that case the court held evidence of this character to be admissible. Judge Lumpkin, in his opinion, says: "As a general rule, it is true, that the slayer can derive no advantage from the character of the deceased for vio-

lence, provided the killing took place under circumstances that showed he did not believe himself in danger. Yet in cases of doubt, whether the homicide was perpetrated in malice, or from a principle of self-preservation, it is proper to admit any testimony calculated to illustrate to the jury the motive by which the prisoner was actuated. . . And in this view, we think the evidence was improperly ruled out."

In *Keener* v. *State*, 18 *Ga.* 223, the following quotation was taken from the case of Quesenberry *v.* State (3 Stewart & Porter, 308), and made a part of the opinion of the court: "If the killing took place under circumstances that could afford the slayer no reasonable grounds to believe himself in peril, he could derive no advantage from the general character of the deceased for turbulence and revenge; but if the circumstances of the killing were such as to leave *any doubt* whether he had not been more actuated by the principle of self-preservation than that of malice, it would be proper to admit *any testimony* calculated to illustrate to the jury the motive by which he had been actuated."

In *Doyal's* case, 70 *Ga.* 134, the rule is stated to be: "A defendant charged with murder can introduce proof that deceased was a person of violent and turbulent character, only where it is shown prima facie that the prisoner had been assailed, and was honestly seeking to defend himself." In *Gardner's* case, 90 *Ga.* 310, while the evidence was held inadmissible under the facts of that case, it was ruled expressly that it is admissible when it can throw any light on the guilt or innocence of the accused. And this view is in harmony with that taken by writers on this subject. See Wharton's Law of Homicide, § 658. "In a homicide case, where the question is as to whether the defendant was exercising the right of self-defense, evidence is competent of the violent and quarrelsome disposition of the deceased." Gillett, Ind. and Col. Ev. 361. "He must prove that he was attacked; and this ground being laid, it is legitimate for him to put in evidence whatever would show that he had reason to believe that such attack was felonious." Wharton's Cr. Ev. 67. Such evidence always admissible upon the question of reasonable fears. 1 Crim. Def. (Horrigan & Thompson), 315.

Always admissible where threats are proved.　Id. 486.　In the case of *Mitchell* v. *State*, 41 *Ga.* 527, it was held that under the facts of that case the putting of the hand in the pocket by the deceased and advancing upon the accused would not justify the latter in assaulting and beating the former.　In the case of *Braswell* v. *State*, 42 *Ga.* 609, the refusal of the judge to charge that such conduct would be sufficient to excite the fears of a reasonable man, was held not to be error.　In the former case the accused himself was the aggressor, and Chief Justice Lochrane says in the opinion that, "when a man goes to another to assail him or demand explanations, or in anger, and the party puts his hand in his pocket, it is an unauthorized presumption that he has a concealed weapon that he is about to draw and use.　Men must depend on something more substantial, even in appearance, than this, without the existence of threats proven in such case."　In the present case not only were threats proven, but the accused was seeking to introduce evidence that the deceased habitually carried upon his person a deadly weapon, and that this was known to the former.　In the *Braswell* case this court says that "it was the province of the jury to determine whether the acts of the deceased were, or were not, sufficient to excite such reasonable fears and justify the homicide."　It will be readily seen that there is nothing in the present case which conflicts with the cases above mentioned.　Nor is anything said in this case to be construed as abrogating or impairing the well-settled rule, that no mere words, threats, menaces or contemptuous gestures will justify the killing of the party using them.　Clearly then the evidence offered should have been received.　The defense of the accused being that he had reason to fear that his own life would be taken, and the existence and the reasonableness of such fears being a question for the jury, it would, of course, make no difference whether upon the occasion of the homicide the deceased actually had upon his person a concealed pistol or not.　An examination of the authorities above cited will show that such evidence has been held admissible where it could throw any light upon the reasonableness of the fears of the accused.　Its admissibility will depend entirely upon the facts in each case;

and as we think the accused, under the facts of this case, was entitled to the benefit of this evidence, that the jury might give it such weight as they saw proper, we are constrained to reverse the judgment of the court below, denying a new trial, on this ground. In addition to the authorities cited above, see 9 Am. & Eng. Enc. L. 683, 689.

2. Complaint is made in the motion for a new trial, that the court refused to allow evidence that a witness for the State was "very intimate and friendly with the deceased and was his 'partner.' This evidence was offered to illustrate the bias and feeling of [the witness], and to impeach him, he having denied that he was such." "The state of the witness's feelings to the parties, and his relationship, may always be proved for the consideration of the jury." Penal Code, §1023. "The relationship of witnesses to parties  .  .  may be taken into consideration by the jury in estimating the credit to be given to them." *Simpson* v. *State,* 78 *Ga.* 91. The case of *Georgia Railroad Company* v. *Lybrend,* 99 *Ga.* 421, while not directly in point, contains some language in the opinion of Justice Lumpkin which throws some light on this question. He says: "In every instance the state of mind of the witness, the motives which will probably influence his testimony, and the temptations which may beset him to swear falsely, are important to be known in passing intelligently upon his credibility." And again, after citing a number of authorities, he says: "These authorities show with unmistakable conclusiveness that the language or conduct of a witness indicating interest, prejudice, partisanship, or partiality, in the case on trial, may be proved for the purpose of discrediting him." In the case of *Bishop* v. *State,* 9 *Ga.* 121, a witness was asked if he was unfriendly to the deceased. This court held that the question was properly allowed, and said that, "a witness may be interrogated as to the state of his feelings toward a party, in order to show the bias under which he testifies; it is not admissible, however, to inquire into the cause of his hostility." In the case of *Skipper* v. *State,* 59 *Ga.* 63, the court was requested to charge that proof of ill will or unkind feelings was "one of the methods of impeaching a witness." This court held that it was not

error to refuse to give this request in charge, but said distinctly that proof of such feelings may weaken the testimony of the witness, and is proper matter for consideration by the jury. Gillett, in his work on Indirect and Collateral Evidence, p. 139, says: "It is not, however, regarded as collateral to show prior ill feeling, interest, or other matter calculated to show the animus of the witness, and substantive evidence can be introduced on this subject, as it goes to the root of the question as to whether the witness's testimony is true." Wharton puts it strongly when he says: "Relationship, party sympathy, personal affection, influence the perceptive powers at least as effectively as does pecuniary interest." And again: "Where, to view the question generally, all restrictions on admissibility are removed, and proof of interest goes only to credibility, influences of all kinds are objects of consideration in determining how far credibility exists. . . There are no cases in which party sympathy, personal friendship, family affection, operate, as a rule, so effectively as they do where life and liberty are at stake." Wharton's Crim. Ev. § 376. It is clear from the authorities above cited that it was competent to prove that a friendly relationship existed between the witness and deceased. The jury might have based their finding entirely on the testimony of the witness sought to be discredited; and while we are very far from holding as matter of law that proof of such relationship existing between the witness and the deceased would be sufficient, standing alone, to authorize the jury to find that the killing was justifiable, still we do hold that it was competent evidence and should have gone to the jury, that they might have given it such weight as they thought proper.

3. Another ground in the motion for a new trial assigns error on the refusal of the court to permit the accused to prove that, several months before the homicide, he had procured a pistol to be used by a person in quelling a disturbance in which the deceased participated, and that ever since that time the deceased had borne him ill will and had repeatedly threatened his life. The court had previously allowed proof of threats communicated to the accused, and the sole question raised by this assignment is as to whether it was competent to prove this act of the ac-

cused occurring several months prior to the time of the homicide.   If this evidence was admissible at all, it was subject to the rules laid down by the courts with reference to the admission of evidence of previous difficulties and quarrels between the accused and the deceased.   In the case of *Monroe* v. *State*, 5 *Ga.* 85, the accused proposed to prove that within six months the deceased and himself had had a difficulty, in which the former had made an attack upon the latter with deadly weapons. This court, in considering an exception taken to the judgment of the trial judge in refusing to admit this evidence, formulated the following rule: "Repeated quarrels may be shown between the parties to establish the malo animo; but you can not go back to a remote period, and prove a particular quarrel or grudge, unless it be followed up with proof of a continued difference flowing from that source."   In that case it will be observed that the "remote period" was within six months, and the previous difficulty was very violent in its nature, being an attack in which deadly weapons were used.   In the case of *Hatcher* v. *State*, 18 *Ga.* 460, it was held not to be error for the trial court to require counsel to begin at the offense charged in the indictment, and travel back to the first fight, before that should be given in proof.   Judge Lumpkin says in the opinion, that "by getting in proof of the first fight, and then failing to connect the two, injury would have been done."   The cases of *Brown* v. *State*, 51 *Ga.* 502, and *Starke* v. *State*, 81 *Ga.* 593, are apparently in conflict with the decisions in *Monroe's* and *Hatcher's* cases.   An examination of these cases, however, will show that they were dealing with the admissibility of this evidence for an entirely different purpose, viz., whether the killing was done with malice or not.   But even if they are in conflict with the two cases cited supra, the earlier cases are binding as authority until they are overruled.   The case of *Shaw* v. *State*, 60 *Ga.* 246, cited in *Starke's* case, supra, is not authority in the present case; for all that was ruled in that case was that it was competent to prove that a quarrel had taken place the day before between the accused and the deceased, and that part of the evidence specially objected to was, "that the state of feeling between defendant and deceased was never very good."

There is nothing in the case of *Coxwell* v. *State*, 66 *Ga.* 312, cited as authority by the plaintiff in error, which conflicts with the ruling made in the present case.   In that case continuous bad feeling was shown.   Justice Crawford uses the following language: "Evidence of previous quarrels have always been held admissible, unless they were separate and independent acts; but wherever they were *continuous* from the inception to the termination of a homicide, and unite the preceding with subsequent acts, thereby shedding light upon motive and explaining conduct, they are admissible."   In the present case no effort was made contemporaneously with the attempted introduction of the evidence to connect the former act with the homicide.   The accused did not state that such connection could be made.   Nor was there anything said by either party at the time of the difficulty which resulted in the killing, tending to show that either had in mind the former trouble.   This case then is controlled by the cases of *Monroe* v. *State*, and *Hatcher* v. *State*, supra.   If the rule is so strict in regard to the admission of evidence of previous difficulties and quarrels, certainly it applies with much greater force in a case where no actual difficulty had taken place, and simply an act had been done by the accused which might tend to cause ill feeling on the part of the deceased.   In the present case, on account of the remoteness of the act, and the fact that no attempt was made to show a continuance of bad feeling springing from that source, the evidence was inadmissible, and the judge did not err in holding it incompetent.   In addition to the authorities above cited, see 22 Am. & Eng. Enc. L. 772, and cases there cited.

*Judgment reversed.   All the Justices concurring.*