## TAYLOR v. THE STATE.

1. In a criminal case the general charge may be so shaped as to present the theories involved in the evidence; and no specific reference need be made to those raised by the statement of the accused, in the absence of any request on that subject, provided the judge calls the attention of the jury to the statement, and charges the law in regard to it as contained in the code.

2. There was no error in the charge on the ground that it confused the defense covered by section 70 of the Penal Code with that covered by section 73.

3. The evidence was sufficient to authorize an instruction on the subject of mutual combat, and the giving of section 73 of the Penal Code in charge.

4. In defining justifiable homicide as laid down in section 70 of the Penal Code, it is inaccurate to use the expression, "in self-defense, or in defense of habitation, property, or person, against one who manifestly intends and endeavors, by violence or surprise, to commit a felony on either," instead of "one who manifestly intends or endeavors."

(a) Whether in every case such a charge would require a reversal, if there were no other error, quære.

5. The evidence, tending to show a quarrel and proposals to fight, possession of a deadly weapon by one party, and the obtaining and use of a heavy stick by the other (who also had a pistol), and being sufficient to involve the doctrine of mutual combat, resulting in the death of one of the parties, was such as to require a charge on the subject of voluntary manslaughter, although there was other evidence tending to show that the son of the deceased had proposed to substitute himself for his father as a combatant, and that this was assented to in words before the fatal shot was fired, all having occurred in one transaction.

6. Some of the requests to charge were not adjusted to the evidence, and some of them did not accurately express the law. Any minor inaccuracies in the charge can be corrected on a new trial.

Argued November 17, 1998.—Decided January 12, 1909.

Indictment for murder.   Before Judge Mitchell.   Tift superior court.   September 14, 1908.

J. H. Tipton, George E. Simpson, and W. J. Wallace, for plaintiff in error.   John C. Hart, attorney-general, and W. E. Thomas, solicitor-general, contra.

LUMPKIN, J.   Dempsy Taylor and Jesse Taylor were indicted for the murder of Shade Conger.   The former was placed on trial alone.   He was found guilty, with a recommendation to mercy. He moved for a new trial, the motion was overruled, and he excepted.   The motion for a new trial contained twenty-eight grounds, but only two or three of them are of such a character as to require discussion.

1. Some of the grounds complained that the court, referring to the evidence, informed the jury that they must inquire from the evidence, "which of course must control you in your verdict," whether or not at the time when the defendant fired the fatal shot the deceased was manifestly intending or endeavoring by violence or surprise to commit a felony on his person.   This and one or two other charges in which reference was made to the evidence were complained of as excluding the accused from the benefit of his statement.   This court has frequently held that the charge may be shaped upon theories presented by the evidence, and that no specific reference need be made to those raised by the statement of the accused, in the absence of any request to do so, provided the judge calls the attention of the jury to the statement and charges the law in regard to it as contained in the code.   In fact it has been said that to give the law on this subject as laid down in the Penal Code, §1010, without more, is a very satisfactory mode of dealing with the statement, in the absence of any request to charge further on the subject.   *Hendricks* v. *State*, 73 *Ga.* 581; *Morgan* v. *State*, 119 *Ga.* 566 (46 S. E. 836) ; *Cæsar* v. *State*, 127 *Ga.* 710 (57 S. E. 710).

2-3.   Other grounds of the motion for a new trial complained that the court charged on the subject of mutual combat, and also that he gave in charge section 73 of the Penal Code without giving in the same connection sections 70 and 71, on the subject of justifiable homicide of one who manifestly intends or endeavors by violence or surprise to commit a felony upon the person of another, and on the subject of reasonable fears.   In another part of the motion for a new trial complaint is made that the court confused section 70 with section 73.   We do not think the court erred either in keeping the defense covered by section 70 and that covered by section 73 too far apart in his charge, or in putting them too close together.   He did charge both.

The contention mainly relied upon on this subject was that there was not sufficient evidence on which to base an instruction touching mutual combat or the placing before the jury of section 73 of the Penal Code. With this contention we can not agree. Acording to the evidence for the State, the accused was angry because Shade Conger had forbidden him to go upon his place. They met at a church where services were being held, and a quarrel ensued, in which the accused appeared to have been the more aggressive of the two. His brother was present with him, while Conger's sons, Abe and Barney, were with him. Abe and others endeavored to quiet the difficulty, and finally succeeded in getting Conger into the church. After the services were concluded, the quarrel was renewed. The accused said that he could whip Conger with one hand tied behind him, and offered to have this done. Reference was made to the impropriety of fighting at church, and the accused said that he would get away from the church, and started off of the church premises. Finally Conger said to him, "Hold on, if it has just got to be settled to-day, whether or no, it had just as well be here as anywhere." The accused stopped and went to meet Conger, who was going in the direction of the buggy in which the two Taylors were seated. Shade and Barney Conger told the women of the family to go home. Another person present endeavored to allay the quarrel, but without effect. Barney Conger said to his father and the accused, "If nothing will do but a fight, it ain't right—it don't look right to fight a man with his hand tied behind him. Listen to me, Dempsy, I ain't got nothing against you, but I tell you what you all do: you all agree to let me or Abe fight Dempsy, and fight a fair fight, and let that be enough, and let that settle it." The accused and the elder Conger both agreed. Abe Conger began to prepare for the contest by pulling off his coat, and offered to allow himself to be searched, in order to see that he was without weapons. Those present told Dempsy Taylor, the accused, that if he had any weapon, he should put it up. He stood still for a short time, then turned as though he were going to his buggy to lay aside a weapon. Jesse Taylor followed him, each having his hand behind him. They stood near the buggy, looking at each other, and toward the crowd, and after a time the accused said: "If you keep looking at me I will not put up anything." In the meantime Shade Con-

ger had cut an oak stick which was about an inch and a quarter or an inch and a half in diameter at the butt end. He approached the buggy where the Taylors were standing. He informed Jim Taylor, a brother of Dempsey, that he had nothing against him, and that he was welcome to come to the house or on the premises of the speaker at any time, but that if any one interfered with the fight he was going to hit them with the stick. He asked Jim Taylor if the latter blamed him, and Taylor responded that he did not. Just before Conger reached the buggy where the Taylors were standing, Dempsy Taylor, who had his pistol in his left hand, leaned forward and struck at Conger. Whether the blow reached its aim or not appeared uncertain. Conger then struck Dempsy with the stick. Both of the Taylors were armed, and both thereupon began to fire upon Shade Conger, and one of them fired also at his son, Abe. Shade Conger first started around the buggy toward the Taylors, and then changed his direction as if starting away. He was wounded. Dempsy Taylor walked around the buggy to within about seven feet of him, took deliberate aim at him, and shot him again. As he was approaching Conger, the latter said, "Don't shoot me any more, you have killed me now." Dempsy said, "If I ain't killed you, I'll kill you now," walked around the end of the buggy, and fired three more times in the direction of Conger. About the time the third shot was fired, the old man got on his feet, "scuffled," and was going away from the Taylor boys. After that there was no more shooting. The old man tried to get his pistol out of his pocket, but he couldn't shoot it. He tried,—changed it from hand to hand, but he couldn't do anything more than that. There was much repetition in the examination and cross-examination of witnesses in regard to the details of the occurrence, and in the repetitions there appeared to be some variations as to detail; but what is recited above is enough to show that there was no error in charging on the subject of mutual combat, and that there was sufficient evidence on which to base such a charge, and leave the question to the jury.

4. In giving section 70 of the Penal Code the judge used the expression "manifestly intending and endeavoring . . to commit a felony," instead of "manifestly intends or endeavors," in the alternative, as used in that section. On a new trial he will doubtless correct any inaccuracy in this regard. Mere words or threats will

not of themselves justify a homicide or reduce it to manslaughter. Penal Code, §65. But evidence of threats communicated to, one who slays is for the consideration of the jury, along with the other evidence, in passing upon the question of reasonable fears, under section 72 of the Penal Code. *Daniel* v. *State,* 103 *Ga.* 203 (29 S. E. 767) ; *Cumming* v. *State,* 99 *Ga.* 662 (27 S. E. 177) ; *Bird* v *State,* 128 *Ga.* 253 (57 S. E. 320). It has been said that "to manifestly intend an act implies more than mental resolution to do the act. The mental resolution must find some form of expression before it becomes manifest. In cases involving force, the slightest manifestation of intent to do the act would be an attempt in the accomplishment of the act." In the case where this was said it was added, "however, it is not necessary to decide that the word 'attempt' is the exact equivalent of 'manifestly intends.'" *Taylor* v. *State,* 121 *Ga.* 356 (49 S. E. 303). So in the present case it is unnecessary to decide whether or not, under the facts and the entire charge, the instruction given would have been error requiring a reversal, had there been no other error.

.5. Complaint was also made that the court failed to charge the law of voluntary manslaughter. The evidence set forth above is not all the evidence in the case, but only enough to understand the points decided. We do not mean to hold or to intimate what verdict the jury should have found, or that, if they found the defendant guilty, they should have found a verdict of manslaughter rather than one of murder. But we think that the evidence which is set out in the preceding division of this opinion is sufficient to show that the law of manslaughter should have been charged, and that that issue should have been submitted to the jury. As the case is to be returned to the superior court for a new trial, a discussion of the evidence would not be desirable. *Jenkins* v. *State,* 123 *Ga.* 523 (51 S. E. 598).

6. Some of the requests to charge were not adjusted to the evidence, and some of them contained words which did not aptly express the law. At the close of his charge on the subjects of murder, malice, self-defense against one manifestly intending or endeavoring by violence or surprise to commit a felony upon the person, reasonable fears, and mutual combat, and immediately following the giving of the law as included in section 73 of the Penal Code, the court said, "Now, I think this law covers this case, and

that it is all that is necessary for me to give you in charge upon the main feature of it." He then proceeded to charge on the subject of reasonable doubt, the prisoner's statement, and the form of the verdict. We think the jury could hardly have misunderstood him as intending to apply the remark quoted solely to the defense referred to in section 73 of the Penal Code which he had just given in charge, rather than to the entire charge which preceded. On a new trial, however, any doubt on this subject can be avoided, and any other verbal inaccuracy can be corrected. As will appear above, a new trial is necessary without regard to this charge.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*