THE STATE OF IOWA, Appellee, v. ANTONIE PIERNOT, Appellant.

**Criminal law:** MURDER: INSTRUCTIONS: SELF-DEFENSE. On this prose-
1  cution for murder the instructions upon the subject of self-defense,
when construed together, are held not prejudicial; as shifting the
burden of proof on that issue to the defendant.

**Same:** MURDER: SUBMISSION OF ISSUES. Where defendant on a prose-
2  cution for murder in the first degree had time for reflection after a
prior assault and a continuous altercation, and upon decedent's re-
turn to the place where defendant was standing, threatening him
with injury, defendant struck the fatal blow, and upon the trial
pleaded self-defense, the court was justified in submitting the ques-
tions of murder in the first and second degrees.

**Same:** FLIGHT: EVIDENCE. The flight of a person is no more than a
3  confession of his guilt, and is not admissible as substantive evidence
in favor of another charged with the same offense.

**Same:** APPEAL: OBJECTIONS NOT URGED BELOW. A party can not urge
4  on appeal questions not raised in the trial court. Thus when de-
fendant accused of murder made no objection to the instructions in
the trial court because not submitting the different degrees of as-
sault, and failed to raise the question in a motion for a new trial
he could not urge the point on appeal.

**Same:** SUBMISSION OF ISSUES: PREJUDICE. Where there was evidence
5  that decedent was injured before the injury inflicted by the de-
fendant, and the court instructed that to justify conviction the jury
must find beyond a reasonable doubt that decedent came to his death
as the result of the injury inflicted by defendant, as charged in the
indictment, no prejudice to him resulted because of omission to
submit the included offense of assault.

*Appeal from Monroe District Court.*—HON. FRANCIS M.
HUNTER, Judge.

SATURDAY, NOVEMBER 21, 1914.

DEFENDANT was indicted for the crime of murder in the
first degree. Upon trial to a jury he was convicted of man-
slaughter, and he appeals.—*Affirmed.*

*Mabry & Hickenlooper,* for appellant.

*George Cosson,* Attorney General, *W. S. Rankin,* Special Counsel, *D. W. Bates* and *N. E. Kendall,* for the state.

Deemer, J.—Defendant was accused of the murder of one Tony Yaki. Both deceased and defendant are Austrians, and were engaged in coal mining. On a Saturday night in the latter part of April, 1913, they met with fifty or sixty other people of their own race, at the home of Tony Tomsic, which we understand is in the town known as Buxton, to have a social dance, according to a common custom among these people. Refreshments were served during the evening. These included beer and perhaps other intoxicants. The party lasted all night, most of the guests remaining until daybreak. Some time early in the morning the deceased had an altercation with Louie Tomsic, a brother of the host, just outside the building, which defendant undertook to quell, and as he says, he, too, was attacked by deceased with a knife, and that in the altercation a coat which he had on was ripped open by Yaki with his knife. Yaki then retired from the scene, passing over or through a fence which marked the boundary line of Tomsic's premises. It is claimed that as he went, or just after he got over the fence, Tomsic threw rocks at the deceased, one, at least, of which struck him (Yaki) in the back. Yaki then recrossed the fence and came back, either running or at a brisk walk, toward quite a crowd of people who had assembled outside the house and near a well, threatening, according to defendant's version, to kill the first man he came to. Defendant also claims that at the time Yaki's face and head were bloody, and that he had a knife in his hand. This is denied by witnesses for the state. According to their testimony, when Yaki came back through the fence, rocks were thrown at him, and that he said, "If you want to kill me, kill me." At any rate, as he approached the defendant he (the defendant) picked up a stick or board, and, as he approached to within a

few feet, struck him a heavy blow over the head, which as the state claims, fractured the skull and resulted in the death of Yaki. The state claims that deceased was unarmed, and that after the affray his knife was found unopened near the scene of the trouble. As a result of the blow it is admitted that deceased was knocked down, and that he was unable to arise from the ground on his first attempt. The impact of the blow was heard at least fifteen feet away, but, unfortunately for us, the stick or board which was used was burned up, and consequently was not used upon the trial nor has it been certified to us. The description given of it in the testimony is very vague. One witness said it was a piece of board. Another said:

A. It was not hard, nor it was not soft; it was a kind of pine wood. Q. A thin pine stick? A. Yes, sir. Q. Do you know what became of that stick? A. Well, some one made a fire and threw it into the fire. I do not know who it was.

A witness for the defendant testified:

Q. About how long was the stick? A. O, about this much [witness indicates]. Q. About how wide across? A. It would be about four inches. It was kind of thin at one end and bigger at the other. One end was a little bit wider than the other. It was about an inch board or a little better. It was an old piece of board. It was soft wood.

And another said:

Q. How big a stick was that? A. O, it was about that long [witness indicated]. Q. How wide? A. This [witness indicates]. Q. How thick was it? A. Inch. It looked like pine. I could see Yaki when Piernot struck him with the stick. They were close together.

Defendant said it was a "piece of board" or "a little board." Whatever the nature of this piece of board, the blow was sufficient to fell the deceased to the earth, and to cause him to stagger, if not fall, when he attempted to arise. The

seriousness of his injuries was not discovered by the physician who was called to attend him the next morning after the affray, but in the afternoon of that day he became unconscious and in the evening he was no better. The next morning, Tuesday, the doctors went back and found that Yaki's skull had been fractured. One of them thus described the situation:

> There was a sort of a three-cornered split of the skull or skull bone and there was a rip from the left eyebrow, and there was a little triangular piece of bone broken entirely loose about one inch across. We removed it with an instrument to relieve the pressure and remove a clot of blood that had gathered under the skull bone. We found an extensive blood clot on the brain. The patient revived some. I saw him again that evening. He was semiconscious then. He died Wednesday about 1 o'clock. I would say that the cause of death was the infliction of a blow on the head, superficial, one fracturing the skull.

It seems that Louie Tomsic left the country at once. As to this, more hereafter.

Defendant had three defenses: First, that he did not strike the blow intending to kill, but that all he aimed to do was to strike the knife from Yaki's hand; second, that what he did was in self-defense; and, third, that the blow struck by him was not the cause of death. The verdict was guilty of manslaughter.

Of course defendant's first defense was not complete in itself; for if he unlawfully struck a blow which resulted in death, he was, under this record, guilty of manslaughter although he did not intend to kill. The second and third defenses were each complete, and these issues were submitted to the jury. But the manner of submission is complained of, and these complaints we will first consider.

Counsel pick out certain parts of the instructions with reference to self-defense, and make them grounds of complaint.

Standing alone, these excerpts would be insufficient in law,

1. CRIMINAL LAW: murder: instructions: self-defense.

but construed with other parts of the charge, they were not erroneous. The instructions with reference to this matter were not conflicting, but some of them needed explanation and elaboration, and this was done in other parts of the charge. The only instruction already not fully approved by this court, relating to this matter, is as follows:

No. 33A. The defense of self-defense, and the evidence relating thereto, should be carefully scrutinized and considered and weighed by the jury to the end that if an accused was in fact acting in self-defense he should not be found guilty, but if he was not acting in self-defense, then a due regard for the ends of justice and peace and welfare of society demand that persons guilty of crime may not make use of that plea as a means of defeating justice, and to protect him from criminal responsibility for a violation of the criminal statutes of our state.

To fully understand this, the one just preceding should also be set out. It is as follows:

No. 33. The defendant is not required to establish that, at the time of the occurrences charged in the indictment, whatever he did do, he was acting in self-defense, but the burden of proof is on the state to show that the defendant was not acting in self-defense, and that it must prove beyond a reasonable doubt. If the state has failed to prove beyond a reasonable doubt that the defendant was not acting in self-defense, you should return a verdict of not guilty. But if, after considering all the evidence and circumstances in the case, including that offered on the plea of self-defense, you have no reasonable doubt of the defendant's guilt, then you should return a verdict finding him guilty.

It should also be stated in this connection that although there were many eyewitnesses and a great number of people who were arrayed with the defendant in his altercation, the principal testimony as to self-defense came from defendant alone, and he said:

When Yaki came from the fence he had a knife in his hand. The knife had not been open, but he wanted to make it open. He was making to open it. When he come up to where we were standing he took the knife out of his pocket. It was shut when he pulled it out, and he started to open it; then I looked around and seen that piece of board, and struck him. Thought I would hit him on the arm, but he dodged, and hit him on the head, over the top of the head.

It also appears from testimony introduced by defendant that when Yaki returned toward the crowd at the well, he was assaulted by Tomsic, or at least he (Tomsic) was ready to receive him, and that there were many people present as he returned toward the well; that he did not have his knife out, and a jury would have been justified in finding that defendant was in no danger from Yaki. Indeed there is practically no dispute that Yaki did not have his knife open, and that Tomsic was as close to him as was defendant when the blow was struck. There is no testimony tending to show that any other of the crowd then present was apprehensive of any danger, although defendant claims that as Yaki returned from the fence he threatened to kill the whole crowd.

Under the record we do not think there was any prejudicial error in the instruction given, although we may say, parenthetically, that it is perhaps better for trial courts to give the usual stereotyped instructions relating to self-defense, rather than to introduce innovations. The instruction set out was merely a cautionary one, and was not intended to, nor did it in fact, shift the burden of proof on the issue of self-defense.

II. Complaint is made because the court submitted to the jury not only the offense charged, but also murder in the first and second degrees, on the theory that there was no testimony to justify either instruction. As to murder in the second degree there was clearly enough testimony. Deliberation and premeditation were not required to justify a finding of murder in the second degree, and in every such killing there is always a question

2. Same: murder: submission of issues.

as to whether the killing was with or without malice; and from the fact of killing alone, without sufficient provocation, the inference of malice arises. The case is more doubtful when considered with reference to murder of the first degree, but even in such cases, where the altercation is continuous as this one was, where there was a precedent assault, as defendant claims, and time for reflection and deliberation, as there was here, and a question as to whether the act was in self-defense, we think the question as to all degrees of homicide properly arose.

III. It is said that the court should have instructed upon the theory that the flight of Louie Tomsic should be considered as substantive testimony bearing upon the defendant's

3. SAME: flight: evidence.

guilt. It is now very well settled that confessions of a stranger, admitting the commission of a crime, are not substantive testimony which may be used by another who is charged with the offense. *Donnelly v. U. S.,* 228 U. S. 243, (33 Sup. Ct. 449, 57 L. Ed. 820, Ann. Cas. 1913E, 710,) and the many cases therein cited, among them *Comm. v. Chance,* 174 Mass. 245, (54 N. E. 551, 75 Am. St. Rep. 306;) *Greenfield v. People,* 85 N. Y. 75, (39 Am. Rep. 636.)

Flight, if proved, is nothing more than a confession by another, and the defendant was not entitled to the use of this testimony in his own defense. The trial court did not err in refusing the instruction asked by defendant on this proposition.

*Scott v. Woodmen,* 149 Iowa, 562, does not, in the opinion of the majority, run counter to this rule.

Directly in support of this holding are: *Levison v. State,* 54 Ala. 520; *Goodlett v. State,* 136 Ala. 39, (33 South. 892); *State v. Gee,* 92 N. C. 756.

The last and only other point made for appellant is that the trial court was in error in not instructing as to the differ-

ent degrees of the offense less than manslaughter. That is,

4. SAME: appeal: objections not urged below.

it is contended that the jury should have been instructed as to the different degrees of assault. The argument proceeds upon the theory that under the testimony the jury might have found that the deceased came to his death by reason of being struck with a stone or stones thrown at him by Tomsic, and yet the defendant may have been guilty in striking him with the board or stick, and should have been found guilty of some kind of an assault, and that if such were the case, it was error in the court below not to have instructed so that defendant might have been found guilty of the crime which in fact he committed. This proposition does not seem to have been made in the trial court. Defendant asked no such instructions, and did not object to those given for the reasons now urged. On the contrary, the instructions asked the trial court were such as to indicate that no reliance was placed on this proposition.

Among defendant's requests, was the following:

7. If you find that the deceased, Tony Yaki, died of injuries inflicted upon him by being struck with rocks or other missiles thrown by one Louie Tomsic, then you cannot find the defendant guilty in this case, even though you may find that the defendant struck the said Tony Yaki with a stick or piece of board, and you are further instructed in this connection that if, after considering all the evidence in the case, you have a reasonable doubt as to whether the said Tony Yaki died from injuries inflicted by rocks or other missiles thrown by said Louie Tomsic, or by being struck with a stick or piece of board by the defendant, then in such event your verdict should be for the defendant, and you should acquit him.

This case was tried after chapter 289, Acts 35th G. A. became effective. Section 3 of that act reads:

All requests for instructions must be presented to the judge before the argument to the jury is commenced and before reading his charge to the jury. The judge, before read-

ing his charge to the jury, shall present all instructions to counsel on either side, each of whom shall have a reasonable time in which to examine the same. All objections or exceptions thereto must be made before the instructions are read to the jury and must point out the grounds thereof specifically and with reasonable exactness; but upon a showing in a motion for a new trial that an error in such instructions was not discovered by the party claiming the error at the time of trial, such objections or exceptions may be made in the same manner in such motion for a new trial and no other objection or exception to the instructions shall be considered by the Supreme Court on appeal, except those made as above provided. The objections or exceptions must point out specifically the exact grounds thereof, and no other objections or exceptions shall be considered by the trial court upon motion for a new trial or otherwise, or by the Supreme Court upon appeal.

Defendant did not object to the instructions given by the trial court because the different degrees of assault were not mentioned in the charge; nor did he rely upon that proposition in his motion for a new trial. Manifestly he is in no position to claim error in the court's failure to instruct as to any lower degree of crime than manslaughter. In order to convict the jury was plainly told that if they had a reasonable doubt "that Yaki died as a result of injuries inflicted upon him by the defendant as charged in the indictment, then you should acquit the defendant." This was given in connection with a statement as to the evidence adduced to show that Louis Tomsic struck Yaki with rocks or other missiles. Manifestly there was no error here of which defendant may properly complain.

5. SAME: submission of issues: prejudice.

We find no error demanding a reversal, and the judgment must be, and it is—*Affirmed.*

LADD, C. J., and GAYNOR and WITHROW, JJ., concurring.